UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ANTHONY LAMONT MOORE,

        Plaintiff,                      Case No. 2:15-cv-142

v.                                          Honorable R. Allan Edgar

TOMMY FEGAN, et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bonnee, Graham, Cress, Woods, Horton, McLean, Calder, and Bailey. The Court will serve the complaint against Defendants Fegan, Thompson, Norton, and Benson.

**Discussion**

I. <u>Factual allegations</u>

Plaintiff Anthony Lamont Moore, a Michigan state prisoner currently confined at the Ojibway Correctional Facility (OCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Supervisor Tommy Fegan, Supervisor Donald Bonnee, Superintendent Roger Graham, Regional Business Manager Carl Cress, Warden Jeffrey Woods, Deputy Warden Connie Horton, Assistant Resident Unit Supervisor Unknown Thompson, Grievance Coordinator Unknown Mclean, Classification Director Unknown Calder, Resident Unit Manager Unknown Bailey, Corrections Officer Unknown Benson, and Resident Unit Manager Unknown Norton.

In Plaintiff's complaint, he alleges that on April 22, 2013, while he was confined at the Chippewa Correctional Facility (URF), he complained to Defendant Fegan about not getting overtime at his job in the M.S.I. (Michigan State Industries) Factory. Defendant Fegan rudely ordered Plaintiff to return to work. Plaintiff filed a grievance on Defendant Fegan. On April 26, 2013, Defendant interviewed on the grievance by Defendant Graham. Defendant Bonnee responded to the grievance, which was ultimately denied at each level.

On April 26, 2013, Defendant Fegan told Plaintiff, "since you like writing grievances, I'm going to do everything in my power to get you remove [sic] out of the factory." Plaintiff complained to Defendant Graham, who indicated that he did not believe Plaintiff and ordered him to return to work. On April 29, 2013, Plaintiff was again harassed by Defendant Fegan and again complained to Defendant Graham. Defendant Graham responded by stating, "deal with it or quit." Plaintiff returned to work. After lunch, Plaintiff was joking with another inmate, who happened to be a "five rate," which is a highly skilled worker. Defendant Fegan told Plaintiff not to be arguing

with the other inmate. Defendant Fegan stated, "I'll fire you're a** right on the spot. He's your boss, and don't you forget it buddy." Plaintiff and the other inmate explained that they were just joking around. Later that day, Defendant Fegan gave Plaintiff a work report which accused Plaintiff of arguing with the "five rate" inmate. When Plaintiff asked Defendant Fegan what the problem was, Defendant Fegan responded that Plaintiff knew the answer to that question. Plaintiff understood this as a reference to the grievance he had filed on Defendant Fegan. Plaintiff signed the work report and was ordered back to work.

As soon as Plaintiff returned to work, Defendant Fegan came and stood directly behind Plaintiff. Plaintiff alleges that Defendant Fegan then "started saying more comments to harass and retaliate against Plaintiff." Plaintiff subsequently filed a grievance regarding the harassment and the falsified work report. Plaintiff was interviewed on the grievance by Defendant Graham on May 8, 2013, and the grievance was responded to by Defendant Bonnee. Plaintiff's grievance was denied at each step. At step II, Defendant Cress falsely stated that Plaintiff was verbally assaultive toward Defendant Fegan on April 29, 2013.

On April 30, 2013, Plaintiff returned to work and Defendant Fegan placed Plaintiff in a skilled job, where Plaintiff, who was semi-skilled, normally did not work. Defendant Fegan stated, "You want to write a grievance on me, I'll show you, mess up and you're done buddy." Later in the day, Defendant Fegan told Plaintiff that he knew about the most recent grievance and that Plaintiff's grievances were "not going anywhere."

On May 1, 2013, Plaintiff worked running pillowcases through the mangler, a device that folds sheets and pillowcases. Another worker told Plaintiff that the pillowcases were coming out wet, so Plaintiff went to get the pillowcases to run them through the mangler a second time. At

this point, Defendant Fegan approached Plaintiff and asked "what the hell" he was doing. Plaintiff explained the situation. After all the pillowcases were done, Defendant Fegan called Plaintiff into his office and stated:

> You still think your grievances [sic] going somewhere, guess again they're not. You still want to write grievances on me, go right ahead. In fact, write one on this.

While Defendant Fegan was talking to Plaintiff, Defendant Graham walked into the office. Plaintiff turned to Defendant Graham and stated, "You know this is harassment and retaliation." Defendant Graham indicated that he was not going to do anything about the situation. Defendant Fegan then started laughing and told Plaintiff that he was fired from his job.

Plaintiff sent a letter of complaint to Defendant Woods, to no avail. On May 2, 2013, Plaintiff sent a letter to the Administrator of M.S.I., as well as to Defendant Cress. Plaintiff did not receive a response to either letter. On May 3, 2013, Plaintiff filed a grievance on Defendant Graham for failing to properly supervise Defendant Fegan, which was rejected at step I and denied at steps II and III. On May 5, 2013, Plaintiff filed a grievance on Defendant Fegan. Plaintiff was interviewed on the grievance by Defendant Bailey on May 16, 2013. Plaintiff states that the account of the interview given by Defendant Bailey was false in that it stated that Plaintiff had received two false write-ups on the job. Plaintiff's step II appeal pointed this out, but Defendant Horton ignored the issue and denied Plaintiff's step II grievance. Plaintiff's step III appeal was also denied.

On May 28, 2013, Plaintiff received a work report in the mail, which was prepared by Defendant Fegan and approved by Defendant Graham. The work report falsely indicated that on May 1, 2013, Plaintiff had argued with M.S.I. staff over his write-ups, which led to Plaintiff's receipt of another write-up. On May 30, 2013, Plaintiff filed a grievance on Defendant Fegan for staff

corruption. However, Plaintiff wrote the wrong date on the grievance, specifically May 3, 2013. Defendant McLean later stated that he never received this grievance.

On June 6, 2013, Plaintiff asked Defendant Thompson to place him on the list for a transfer to a prison in Michigan's lower peninsula. Defendant Thompson responded by stating, "you're not going anywhere, so write a grievance on that since you like writing them." On June 7, 2013, Plaintiff asked Defendant Thompson to turn in a phone disbursement so that he could call a lawyer and his family. Defendant Thompson refused Plaintiff's request and again referenced Plaintiff's use of the grievance procedure. Plaintiff subsequently got the block rep to assist him and was able to turn in his phone disbursement. Plaintiff filed a grievance on Defendant Thompson, which was denied at each step.

Plaintiff alleges that Defendant Calder erred in failing to interview him prior to terminating him from his M.S.I. job and by denying Plaintiff's grievance at step I. On August 26, 2013, Plaintiff was assaulted by another inmate. Plaintiff was improperly charged with fighting and was taken to segregation. From August 27, 2013, until September 3, 2013, Plaintiff sent numerous letters to Defendant Norton explaining that there was a hit out on him and that inmates at URF, Kinross Correctional Facility (KCF), and Alger Correctional Facility (LMF) wanted him dead, so it was not safe for Plaintiff to reside at any of these facilities. Plaintiff did not receive a response. On September 11, 2013, Plaintiff stopped Defendant Norton while he was making rounds and asked to talk to him. Plaintiff was subsequently escorted to Defendant Norton's office, where he explained his situation. Defendant Norton stated, "Yes I know you, you like to write a lot of grievances on my staff. And where we send you, you're going to have to deal with it."

Later that day, Plaintiff asked a Corrections Officer to get his legal papers from his property. When the Corrections Officer returned, he told Plaintiff that he did not have any legal papers. When Plaintiff asked who had packed his property, the Corrections Officer told him that it was the same person who had written the ticket on him. Plaintiff claims that his legal property consisted of an affidavit from a prisoner who had been fired by Defendant Fegan after he filed a grievance, as well as affidavits from prisoners who witnessed Defendant Fegan's retaliatory conduct toward Plaintiff. Plaintiff also had copies of grievances and letters.

Plaintiff was transferred to LMF on September 16, 2013. Plaintiff discovered that Defendant Benson had packed his property prior to the loss of his legal property, so he sent a letter to Defendant McLean requesting a step I grievance form. Plaintiff never received a response. On October 28, 2013, Plaintiff received memoranda from Defendant McLean dated September 12, 2013, and October 24, 2013, which stated that he was enclosing step I grievance forms so that Plaintiff could file grievances regarding his lost property. However, Plaintiff contends that he was never actually given the grievance forms.

In Plaintiff's supplemental complaint filed on October 22, 2015 (ECF No. 5-1), he asserts that Defendant Cress ignored numerous letters regarding the retaliatory conduct of Defendants Graham, Bonnee, and Fegan, which resulted in Plaintiff's loss of employment at M.S.I. Finally, Plaintiff claims that Defendants all violated grievance policy in the handling of his grievances in various ways on numerous occasions.

Plaintiff states that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Plaintiff also asserts that Defendants' conduct violated his right of access to the courts. However, Plaintiff' right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for

initiation of a civil rights action. In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable access to courts claim.

Plaintiff claims that Defendant Graham violated the Eighth Amendment by failing to act in order take corrective action against Defendant Fegan, and that Defendant Norton acted with deliberate indifference to Plaintiff's safety when he had Plaintiff transferred to LMF. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference

standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

An Eighth Amendment claim comprises objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 1977 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837. Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness. *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4. Plaintiff's allegations do not show that Defendant Graham was aware of any risk to his health or safety as a result of Defendant Fegan's conduct.

With regard to Defendant Norton, Plaintiff claims that he told Defendant Norton that he had enemies at LMF. However, Plaintiff does not allege that he actually received threats from anyone at LMF. Nor does Plaintiff allege that his transfer to LMF by Defendant Norton resulted in any injury. The court concludes that Plaintiff's allegations fail to show that Defendant Norton knew of and disregarded an excessive risk to Plaintiff's health or safety. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

Plaintiff claims that Defendant Thompson violated the Equal Protection Clause of the Fourteenth Amendment when he refused to place Plaintiff on the list to be transferred to the lower peninsula. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, There is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any choice concerning the facility where he will be incarcerated. *Meachum v. Fano*, 427 U.S. 215 (1976); *Olim v. Wakinekona*, 461 U.S. 238 (1983).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). However, Plaintiff fails to allege specific facts showing that he was treated differently from similarly situated prisoners. Moreover, it is clear for Plaintiff's allegations that he is asserting that Defendant Thompson denied his request because he wished to retaliate against Plaintiff for his use of the grievance system. Therefore, Plaintiff's claim against Defendant Thompson is is properly analyzed as a retaliation claim pursuant to Plaintiff's rights under the First Amendment.

Plaintiff claims that Defendants McLean, Woods, Bonnee, and Graham retaliated against him for his use of the grievance system by placing him on modified access to the grievance procedure and by improperly responding to his grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). However, the court notes that the Sixth Circuit has repeatedly held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005).

In *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001), the court stated:

> Kennedy's claim that placement on modified access violated his First Amendment right of access to the courts is likewise without merit. 42 U.S.C. § 1997e(a) requires prisoners to exhaust "such administrative remedies as are available" prior to filing suit in federal court. If a prisoner has been placed on modified access to the grievance procedure and attempts to file a grievance which is deemed to be non-meritorious, he has exhausted his "available" administrative remedies as required by § 1997e(a). Consequently, Kennedy's placement on modified access cannot prevent him from filing claims in federal court. Accordingly, Kennedy's access to courts claims were properly dismissed.
>
> Kennedy failed to state a retaliation claim because no adverse action "that would deter a person of ordinary firmness from continuing to engage in that conduct" was taken against him. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999). Placement on modified access to the grievance procedure does not constitute such an action. Placement on modified access did not deprive Kennedy of the ability to file civil rights actions in federal court. Kennedy's placement on modified access to the grievance procedure merely enabled prison officials to screen Kennedy's grievances prior to filing to determine whether they were grievable, non-frivolous, and non-duplicative. See Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP). Moreover, Kennedy was not deterred from continuing to engage in the protected conduct because he continued to attempt to file grievances.

*Id.*

In addition, in *Corsetti v. McGinnis*, No. 00-1409, 2001 WL 1298830, at *2 (6th Cir. Aug. 7, 2001), the court noted:

> Nor can Corsetti show a First Amendment violation based upon either his placement on modified grievance access or the reading of his legal mail and legal materials. Modified access to the grievance process does not deny Corsetti the right or ability to seek redress for meritorious grievances. Rather, it merely requires the prisoner to obtain permission from the grievance coordinator to file a grievance. See Hartsfield v. Mayer, No. 95-1411, 76 F.3d 378 (table), 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) (unpublished). Regarding the alleged reading of Corsetti's legal mail and legal materials, Corsetti has not alleged, nor is there any evidence, that any papers were seized or that the defendants' reading of the papers caused actual injury or "hindered [his] efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Finally, Corsetti failed to establish the elements of his retaliation claims because either the acts that he alleged the defendants committed would not deter a person of ordinary firmness or he produced no evidence that the defendants were motivated to act against him because of his grievances or prior lawsuits. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

*Id.*

As noted above, Plaintiff claims that Defendants McLean and Woods improperly placed him on modified access and Defendants Bonnee and Graham improperly responded to his grievances in violation of MDOC policy. However, as noted above, 42 U.S.C. § 1997e(a) only requires prisoners to exhaust "such administrative remedies as are available" prior to filing suit in federal court. Once Plaintiff attempted to file a grievance and was prevented from doing so through no fault of his own, he was free to file suit in this court. The conduct of Defendants McLean, Woods, Bonnee, and Graham did not deprive Plaintiff of the ability to file suit in federal court.

Therefore, the alleged misconduct of Defendants McLean, Woods, Bonnee, and Graham does not constitute adverse action for purposes of a retaliation claim.

Plaintiff also claims that Defendants Fegan, Thompson, Norton, and Benson retaliated against him when they fired him from his job, prevented him from being placed on a list for transfer to the lower peninsula, had him transferred to a prison where he felt endangered, and destroyed his legal property. The court concludes that these claims are not clearly frivolous and may not be dismissed on initial review.

Plaintiff claims that Defendants Benson violated his due process rights when he either confiscated or destroyed Plaintiff's legal property. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendant Benson will be dismissed.

Plaintiff claims that Defendants Graham and Woods failed to properly supervise subordinates or to take corrective action. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th

Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Graham and Woods were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Graham and Woods had in this action involve the denial of administrative grievances or the failure to act. Defendants Graham and Woods cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Defendants Graham and Woods are properly dismissed for lack of personal involvement.

Plaintiff claims that Defendants conspired to violate his constitutional rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement

between them. He relies entirely on a highly attenuated inference from the mere fact that Defendants have made decisions which adversely affect him in relation to his numerous grievances. As noted by the Supreme Court, allegations which do not contain "enough factual matter (taken as true) to suggest that an agreement was made" are not sufficient to support a conspiracy claim *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that Defendants' conduct was unrelated, Plaintiff fails to state a plausible claim of conspiracy.

Plaintiff also claims that Defendants violated his rights under state law. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998). Plaintiff's state law claims will be dismissed without prejudice to his ability to pursue those claims in state court.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bonnee, Graham, Cress, Woods, Horton, McLean, Calder, and Bailey will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and

42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Fegan, Thompson, Norton, and Benson.

An Order consistent with this Opinion will be entered.


Dated: __12/2/2015__                                          __/s/ R. Allan Edgar__
                                                              R. ALLAN EDGAR
                                                              UNITED STATES DISTRICT JUDGE