UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY LAMONT MOORE #255379,

    Plaintiff,

v.                                                      Case No. 2:15-cv-142
                                                          HON. PAUL L. MALONEY
TOMMY FEGAN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by state prisoner Anthony Lamont Moore pursuant to 42 U.S.C. § 1983. The only remaining claims in this case are retaliation claims against Defendants Tommy Fegan and Shane Thompson. Defendants have now filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 34.) Plaintiff has responded. (ECF. No. 41.) This matter is now ready for decision.

        The following are the facts related to the remaining claims viewed in the light most favorable to Plaintiff. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994) (noting any direct evidence offered by Plaintiff in response to a summary judgment motion are accepted as true)). During a portion of the time that Plaintiff was confined at Chippewa Correctional Facility (URF), Plaintiff worked at the Michigan State Industries (MSI) laundry factory. Defendant Fegan was Plaintiff's supervisor at the factory. On January 18, 2013, Plaintiff received a "Prisoner Program and Work Assignment Evaluation." PageID.592. Although the evaluation stated that Plaintiff needed to "put forth more effort," Plaintiff still received an "average score." PageID.592.

On April 22, 2013, Plaintiff complained to Defendant Fegan about not receiving any overtime.  PageID.8.  In response, Defendant Fegan said, "get out of my face, I don't want to talk about it, and go back to work."  PageID.8.  Plaintiff felt "humiliated and uncomfortable" and subsequently filed a grievance against Defendant Fegan.  PageID.8.

On April 29, 2013, Plaintiff was joking around with another inmate who was considered a "highly skilled worker" at the MSI factory.  PageID.9.  After observing this interaction, Defendant Fegan told Plaintiff not to argue with the inmate and stated: "I'll fire you're a** right on the spot. He's your boss, and don't you forget it buddy."  PageID.9.  Shortly thereafter, Defendant Fegan called Plaintiff into his office, and Plaintiff asked him what the problem was.  PageID.9.  Defendant Fegan said, "you know what the problem is," and handed Plaintiff another "Prisoner Program and Work Assignment Evaluation" dated April 29, 2013.  PageID.9-10, 594.  Although the evaluation stated that Plaintiff was arguing with the highly-skilled worker, Plaintiff still received an "average score."  PageID.594.  Plaintiff subsequently filed another grievance against Defendant Fegan.  PageID.10.

On April 30, 2013, Defendant Fegan placed Plaintiff in a skilled job even though Plaintiff was semi-skilled.  PageID.11.  Plaintiff alleges that this was an attempt to make him mess up so Defendant Fegan could fire Plaintiff "right on the spot."  PageID.11.  Defendant Fegan told Plaintiff, "[Y]ou want to write a grievance on me. I'll show you, mess up and you're done buddy."  PageID.11.  Defendant Fegan also told Plaintiff that he knew about the most recent grievance and that the grievances were "not going anywhere."  PageID.11.

On May 1, 2013, Plaintiff was at the factory running pillowcases through the mangler.  PageID.11.  Defendant Fegan asked Plaintiff "what the he** you think you're doing."  PageID.11.  Defendant Fegan also stated: "You still think your grievances [are] going

somewhere, guess again they're not. You still want to write grievances on me, go right ahead. In fact, write one on this." PageID.11. Shortly thereafter, Defendant Fegan told Plaintiff that he was fired. PageID.11-12.

On May 30, 2013, Defendant Thompson—who is an Assistant Resident Unit Supervisor at URF—interviewed Plaintiff in response to a grievance that Plaintiff filed against the grievance coordinator. PageID.618. During this interview, Plaintiff attempted to explain to Defendant Thompson that Plaintiff's mother had spoken to MDOC Administration regarding the grievance procedure. PageID.618. Defendant Thompson told Plaintiff that his mother did not know "sh**." PageID.618.

On June 6, 2013, Plaintiff asked Defendant Thompson to place him on the list for a transfer to a prison in Michigan's lower peninsula. PageID.14. Defendant Thompson refused to add Plaintiff to the list and said, "you're not going anywhere, so write a grievance on that since you like writing them." PageID.14. The following day, Plaintiff asked Defendant Thompson to turn in a phone disbursement so that he could call his family and a lawyer. PageID.14. Again, Defendant Thompson refused. PageID.14. Plaintiff subsequently turned in the phone disbursement to a "block rep." PageID.14.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing

that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In his first claim, Plaintiff's alleges that Defendant Fegan retaliated against him for filing grievances when Defendant Fegan: (1) made intimidating and harassing comments; (2) made false statements in a work evaluation; (3) made threats; (4) put Plaintiff in a skilled position when

Plaintiff was unskilled; and (5) fired Plaintiff.  Defendant Fegan argues that Plaintiff failed to establish the causation element in his retaliation claim against Defendant Fegan for two reasons.

First, Defendant Fegan argues that regardless of whether Plaintiff filed any grievances, Defendant Fegan would have taken the same action.  *See Thaddeus-X*, 175 F.3d at 399 ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.").  According to Defendant Fegan:

> The MDOC MSI Operating and Work Manual, page 4, addresses corrective action for MSI workers. "The following examples of specific situations, 1) insufficient production, 2) unacceptable quality, 3) accident prone, 4) temporary out of place, and 5) poor attitude, as well as others, will cause a prisoner to be disciplined beginning with counseling (Counseling Memo – CAR 723) up to and including termination. Three (3) counseling memos received in a six (6) month period will result in termination or program reclassification.["]

PageID.499.  Defendant Fegan alleges that Plaintiff received counseling memos on January 18, 2013, April 29, 2013, and May 1, 2013.  PageID.499-500.  Because the counseling memos were within six months, Defendant Fegan requested that the Classification Department terminate Plaintiff's employment.  However, Plaintiff argues that he did not receive any "CAR – 723 counseling memos."  Instead, Plaintiff contends that he received CSJ – 363 Prisoner Program and Work Assignment Evaluations.  Plaintiff attached copies of the January 18, 2013, and April 29, 2013, evaluations.  PageID.591-594.  In both of these evaluations, Plaintiff received an "average score."  PageID.591-594.  Based on the record, it is unclear whether these work evaluations amount to counseling memos.  Moreover, Defendant Fegan did not file a reply brief addressing this issue and neither party attached a copy of the May 1, 2013, document.

Second, Defendant Fegan argues that Plaintiff cannot demonstrate the causation element because the Classification Department, not Defendant Fegan, made the ultimate decision to terminate Plaintiff's employment. "[A] defendant can be liable for a retaliatory adverse action only if the defendant himself had the authority to take that action." *Solomon v. Lafler*, No. 2:08-CV-13536, 2009 WL 2591378, at *7 (E.D. Mich. Aug. 24, 2009). *See also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that two prison food service supervisors who had instigated the termination of a prisoner from his position were not liable for retaliation because they did not have the authority to fire the plaintiff); *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (holding prison employee could not be liable for retaliation based on prisoner's transfer, where employee "was not the decisionmaker"). In this case, while Defendant Fegan states that he "requested the termination," Defendant Fegan does not address whether he had any authority to terminate Plaintiff's employment. PageID.500-501. Moreover, Defendant Fegan failed to submit a copy of the MDOC MSI Operating and Work Manual. Based on this record, it is unclear whether Defendant Fegan had the authority to terminate Plaintiff's employment.

In addition, Defendant Fegan argues that the alleged retaliatory act of terminating Plaintiff's employment position is *de minimis*, therefore, not capable of deterring a person of ordinary firmness from filing grievances. To support this argument, Defendant Fegan states that a prisoner does not have a constitutional right to a particular job. Although a prisoner does not have a constitutional right to a particular job, a prisoner cannot be terminated from a job in retaliation for exercising a constitutional right. *See Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010) (finding that even though an inmate does not have a constitutionally-protected liberty interest in being held at particular facility, the inmate cannot be transferred to a new prison in retaliation for exercising his First Amendment rights). Furthermore, Defendant Fegan fails to

address Plaintiff's additional allegations that he (1) made intimidating and harassing comments; (2) made false statements in a work evaluation; (3) made threats; and (4) put Plaintiff in a skilled position when Plaintiff was unskilled. Therefore, in the opinion of the undersigned, Defendant Fegan has failed to establish that he is entitled to judgment as a matter of law on Plaintiff's retaliation claim against him.

In his second claim, Plaintiff alleges that Defendant Thompson retaliated against him for filing grievances against Defendant Thompson's coworkers when Defendant Thompson refused to put Plaintiff on a transfer list and did not accept Plaintiff's phone disbursement. Defendant Thompson argues that Plaintiff's bare allegations fail to establish the causation element—that Plaintiff's use of the grievance system was a substantial or motivating factor in the Defendant Thompson's actions. Plaintiff alleges that he filed several grievances against Defendant Thompson's coworkers and that Defendant Thompson interviewed Plaintiff regarding some of these grievances. Defendant Thompson subsequently refused to put Plaintiff on a transfer list or accept Plaintiff's phone disbursement and said, "you're not going anywhere, so write a grievance on that since you like writing them." Assuming that these allegations are true, they are insufficient to show that Plaintiff's filing of grievances against coworkers were the motivating factor behind Defendant Thompson's conduct. The record shows that Plaintiff filed many grievances while confined at URF. PageID.179-313. In the opinion of the undersigned, simply acknowledging that Plaintiff has a history of filing grievances does not establish any causal connection.

In addition, Defendant Thompson argues that the alleged retaliatory acts of not adding Plaintiff to a transfer list or not accepting a phone disbursement is *de minimis*, therefore, not capable of deterring a person of ordinary firmness from filing grievances. In most cases that involve a retaliation claim and a prison transfer, the prisoner is claiming that the actual transfer or

threat to transfer was the adverse action. *See, e.g.*, *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010) (finding a threat to transfer a prisoner was an adverse action); *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) (finding that a prison transfer was not an adverse action). Here, Plaintiff is claiming that the failure to be added to a list to even be considered for a transfer was the adverse action. Yet, Plaintiff does not allege any facts to explain why this action would deter a person of ordinary firmness from filing grievances. Next, even though Defendant Thompson refused to accept Plaintiff's phone disbursement, Plaintiff was able to find another prison official to accept his phone disbursement on the same day. This type of minor, isolated incident is unlikely to deter a person of ordinary firmness from filing grievances. *See Smith v. Yarrow*, 78 F. App'x 529, 541 (6th Cir. 2003) (finding that a onetime refusal to make a photocopy by a librarian would not likely to deter a person of ordinary firmness from exercising their First Amendment rights). Based on these facts, Plaintiff has not shown that Defendant Thompson's conduct amounted to an adverse action that would deter a person of ordinary firmness from filing grievances. Therefore, in the opinion of the undersigned, Defendant Thompson is entitled to judgment as a matter of law on Plaintiff's retaliation claim against him because Plaintiff has failed to establish an adverse action and causation.

Defendants also move for qualified immunity on both claims. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his

conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

When making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

Because there are material questions of fact as to whether Defendant Fegan committed constitutional violations, the undersigned must determine whether the right was clearly established. It is well-established that a prisoner cannot be retaliated against for filing grievances. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). In addition, the Sixth Circuit has noted that harassment, threats, and falsifying reports can amount to adverse actions. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (noting that harassment and physical threats can amount to adverse actions); *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (noting that false disciplinary reports can amount to an adverse action). Therefore, in the opinion of the undersigned, the law is clearly established.

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 34.) be granted in part and denied in part. Plaintiff's retaliation claim against Defendant

Thompson should be dismissed. Therefore, Plaintiff's retaliation claim against Defendant Fegan is the only remaining claim.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: November 1, 2016

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE